IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARVIN CHARLES, : | |
|     Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | |
| UPS NATIONAL LONG TERM : | No. 5:12-cv-6223 |
| DISABILITY PLAN and AETNA LIFE : | |
| INSURANCE COMPANY, : | |
|     Defendants. : | |

**REPORT AND RECOMMENDATION**

TIMOTHY R. RICE                                                                                                May 4, 2017
U.S. MAGISTRATE JUDGE

Plaintiff Marvin Charles successfully challenged the denial of his long-term disability benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), and now seeks attorney's fees and costs. See 10/30/2015 Summary Judgment Op. ("SJ Op.") (doc. 42); 11/16/2015 Motion for Attorney's Fees ("Mot.") (doc. 46). Judge Stengel has referred the motion to me for a Report and Recommendation. See 4/13/2017 Order (doc. 48). I recommend awarding Charles $27,055 in fees and $475.76 in costs.

Legal Standards

I have discretion to grant a "reasonable attorney's fee and costs of action" to either party. 29 U.S.C. § 1132(g)(1). To support his request for fees, Charles bears the burden of production at each of three steps.

First, he must prove he has achieved "some degree of success." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 255 (2010). Second, he must explain how the following five factors support awarding fees: (1) Aetna's culpability or bad faith; (2) Aetna's ability to satisfy a fee award; (3) the deterrent effect of an award; (4) the benefit conferred on members of Charles's plan as a whole; and (5) the relative merits of the parties' positions. Templin v.

Independence Blue Cross, 785 F.3d 861, 867 (3d Cir. 2015) (citing Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983)).  Third, he must prove the requested fees are reasonable.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  Using the lodestar method, I check the reasonableness of his request by determining: (1) a reasonable hourly rate, (2) a reasonable number of hours expended, and (3) the product of those two figures.  Id.; Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 310 (3d Cir. 2008).

A burden-shifting framework establishes the reasonable rate.  Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001).  Charles must submit his own attorney's affidavit and other satisfactory evidence to establish the prevailing market rates in the community.  Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984).  The rates are determined as of the date of the request, not the date the work was performed.  Lanni, 259 F.3d at 149; see also Purdue v. Kenny A ex. rel. Winn, 559 U.S. 542, 556 (2010).  Once this prima facie case has been made, the burden shifts to Aetna to submit contradictory evidence.  Babish v. Sedgwick Claims Mgmt. Servs., No. 07-1539, 2009 U.S. Dist. LEXIS 62963, at *11 (W.D. Pa. July 22, 2009) (citing Lanni, 259 F.3d at 149).  A hearing may be necessary if Aetna produces contradictory evidence that raises a genuine factual dispute regarding the prevailing market rate.  Lanni, 259 F.3d at 149.  If Aetna fails to produce contradictory evidence, the rate may not be adjusted downwards.  Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1036 (3d Cir. 1996).

Once a reasonable billing rate is determined, I must review the billing records to ensure Charles's attorney exercised reasonable "billing judgment," i.e., that Charles seeks payment for only a reasonable number of hours.  Tomasko v. Ira H. Weinstock, P.C., 357 F. App'x 472, 478 (3d Cir. 2009).  Any excessive, redundant, or unnecessary time is excluded.  Interfaith Community Organization v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005).

Fee Eligibility

Charles obtained the benefits he sought on summary judgment. He is eligible to receive attorney's fees and costs. 29 U.S.C. § 1132(g)(1); Hardt, 560 U.S. at 255.

Ursic Factors

The five Ursic factors weigh in favor of awarding fees. Judge Stengel determined Aetna "arbitrarily and capriciously" denied Charles's claim for benefits by selectively reading the medical record and improperly requiring objective evidence of subjective symptoms. SJ Op. at 31-32. He also found the denial was motivated by Aetna's conflict of interest. Id. at 40 ("From reading the record, it is clear that Aetna's goal was to deny the plaintiff's claim."). This factor weighs strongly in favor of awarding fees.

Aetna does not contest the second factor: that it could "easily satisfy the small fee award requested." Mot. at 5; see also Resp. (doc. 47). Moreover, Aetna has recently been found capable of paying a fee award in at least one other, similar case. See Berkoben v. Aetna Life Ins. Co., No. 2:12-CV-1677, 2014 WL 3565959, at *11 (W.D. Pa. July 18, 2014) ("Where the offending party's ability to pay is not disputed, the court of appeals has held that the second Ursic factor should be resolved in favor of an award of fees") (citing Ellison v. Shenango Inc. Pension Bd., 956 F.2d 1268, 1277 (3d Cir. 1992)).

The third factor, the deterrent effect, also weighs in favor of the award. The economic stakes in this case were low for Aetna, but critical for Charles, who relied on his long-term disability benefits to substitute for the salary he could no longer earn once his medical condition prevented him from driving. SJ Op. at 1-3. Although its vocational analysis conflicted with the recommendation of its own peer review physician, Aetna vigorously opposed an award of benefits, including filing a discovery motion and opposing Charles's request for attorney's fees. See docs. 21, 23, 25, 47; see also Tomasko, 357 F. App'x at 479 (declining to reduce "excessive"

fees from "prolonged" litigation caused by losing party's own strategy). A fee award will deter arbitrary and capricious benefit denials in the future by better aligning Aetna's financial incentives with its fiduciary obligations to its ERISA plan beneficiaries. Glunt v. Life Insurance Company of North America, No. 11-3105, U.S. Dist. LEXIS 35710, at *3 (E.D. Pa. March 16, 2012); see also Templin, 785 F.3d at 868 (noting the "close relationship" between factors one, three, and five).

The fourth factor, the benefits conferred on other plan members, also weighs in favor of awarding fees. Absent fee-shifting, claimants like Charles would have difficulty obtaining competent counsel. United Auto Workers Local 259 v. Metro Auto Center, 501 F.3d 283, 295 (3d Cir. 2007); Perdue, 559 U.S. at 552 ("[a] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation").

The final factor, the relative merits of the parties' positions, also justifies a fee award. Charles prevailed on summary judgment in a case that featured a denial of benefits motivated by conflict of interest. SJ Op. at 40.

Aetna argues against awarding fees for time spent by Charles's attorney on the deposition of Nicole Caldwell and Charles's motion to determine the standard of review, contending they were not relevant and/or successful. Resp. at 4-5. These arguments do not affect whether attorney's fees should be awarded because they do not reflect the relative merits of the parties' positions with respect to the ERISA claims. Tomasko, 357 F. App'x at 479. These arguments are more appropriately considered as part of the lodestar calculation.

Charles deposed Caldwell to obtain admissible evidence about Aetna's procedural irregularities and conflict of interest, which he argued were relevant regardless which standard of review was employed. Resp. to Motion to Quash (doc. 22) at 8. Charles prevailed in opposing

4

Aetna's Motion to Quash Caldwell's deposition, strengthening the relative merits of his case.[1] November 19, 2013 Order (doc. 27).

Aetna also erroneously claims Charles "made two attempts to challenge the standard of review to be applied by the trial court." Resp. at 1. Judge Stengel declined to address Charles's first request to determine the applicable standard of review because the case was scheduled for a settlement conference. May 16, 2013 Order (doc. 15) at 1 n.1. After settlement negotiations failed, Charles re-asserted his argument and it was addressed by the court for the first time on summary judgment. SJ Op. at 25. Although Judge Stengel denied Charles's standard of review argument, he found that Aetna's denial of benefits violated even the more deferential standard. Id. at 40-41. Because this determination did not affect Charles's "degree of success," the hours spent on the unsuccessful motion are more appropriately considered in the second part of the lodestar calculation. Tomasko, 357 F. App'x at 479.

## Lodestar Analysis

A. Hourly Rate

As for the first step of the lodestar calculation, determining a reasonable hourly rate, Charles submitted two affidavits from Pennsylvania ERISA attorneys to justify $350/hour as the "prevailing market rate" for the "relevant community."[2] Interfaith, 426 F.3d at 703-05. One affidavit is by an attorney who litigates ERISA cases in the Eastern District of Pennsylvania and charges $350/hour, and another is by a Lancaster attorney who charged $460/hour in his prior,

---

[1] Although Judge Stengel noted that he would not rely on information from Caldwell's deposition cited in Charles's summary judgment motion because it went to a procedural rather than a structural conflict of interest, Judge Stengel did find Aetna had a conflict of interest and that it motivated the wrongful denial of benefits. SJ Op. at 25 n.123.

[2] Charles requests a rate of $350/hour, but his itemized bill charges a rate of $325/hour through 2013 and $350/hour in 2014. Exhibits to Plaintiff's Motion for Fees ("Ex.") (doc. 46-1) at 2. As part of the lodestar analysis, a "reasonable rate" is determined as of the date of the fee request. Lanni, 259 F.3d at 149.

private practice. Ex. at 5-8. Charles also cited two cases filed one and two years before his case, in which the courts approved a rate of $325/hour for his attorney, Kirk Wolgemuth. See Mot. at 5 (citing Glunt, 2012 U.S. Dist. LEXIS 35710, at *12 and Heim v. Life Insurance Company of North America, No. 10-1567, 2012 U.S. Dist. LEXIS 59088, *9-10 (E.D. Pa. April 26, 2012)).

Wolgemuth, however, has failed to submit an affidavit on his own behalf, as is required to satisfy the prima facie burden in the lodestar analysis. Smith v. Philadelphia Housing Authority, 107 F.3d 223, 225 (3d Cir. 1997) (citing Blum, 465 U.S. at 895 n.11). Aetna, which objects to the $350/hour proposed rate, also fails to offer any evidence that would support a lower rate. See Resp. at 6. There is therefore no genuine factual dispute, and no hearing is required. Lanni, 259 F.3d at 149.

"The best evidence of a prevailing market rate is counsel's customary billing rate." Mitchell v. City of Philadelphia, No. 99-6306, 2010 WL 1370863, at *14 (E.D. Pa. Apr. 5, 2010). According to Wolgemuth's affidavit in Heim, his billing rate in 2012 was $325/ hour. Heim, No. 10-1567 (doc. 36-1), at 2-4. The billing records submitted in this matter show that this rate increased to $350/hour at the beginning of 2014. Ex. at 2 (requesting $650 for two hours work performed 12/31/13 and $630 for 1.8 hours work performed 1/3/14).

To determine a reasonable rate, courts sometimes rely on the Community Legal Services ("CLS") fee schedule, although its rates have at times been rejected because of their failure to account for specialized knowledge or experience. See E.C. v. School Dist. of Philadelphia, 91 F.Supp.3d 598, 606 (E.D. Pa. 2015) (listing cases). The 2011 CLS fee schedule rate for an attorney of comparable years experience to Wolgemuth ranges from $360-$460/hour. Harris v. Paige, No. 08-2126, 2013 WL 4718949, at *4 (E.D. Pa. Sept. 3, 2013). Based on the affidavits provided, the background information about Wolgemuth submitted in Heim, and the CLS fee

schedule, I conclude that $350/hour is a reasonable hourly rate for an attorney of Wolgemuth's expertise and capabilities.

B. Reasonable Number of Hours

Aetna makes six objections to the number of hours Wolgemuth expended on this litigation. Resp. at 4-5. First, Aetna contends that five hours is an unreasonable amount of time for Wolgemuth to have spent drafting Charles's complaint because it was "rather boilerplate," and included a second claim, which was later abandoned. Id. at 4.

I disagree. The billing records show Wolgemuth spent 3.5 hours drafting the complaint and 1.5 hours revising it. Ex. at 2. Although Aetna alleges that only 20 of the 38 paragraphs contain legally proper averments, I attribute counsel's succinct description of Charles's complicated medical and employment history to expertise, not overbilling. Moreover, Wolgemuth drafted his complaint without the benefit of Charles's claims file, even though it had already been requested from Aetna. Complaint, attached to Notice of Removal (doc. 1), at 16, ¶ 23.

With respect to the forfeited second claim, Aetna offers no evidence that suggests it was meritless. To the contrary, Judge Stengel noted that Aetna appeared to owe Charles at least $600 in statutory penalties under Count II. SJ Op. at 42. Judge Stengel declined to enter judgment for Charles on the second count only because neither party addressed the claim in their cross-motions for summary judgment. Id. The Joint Stipulation to drop the claim, signed November 3, 2015, does not admit that the claim lacked merit, and Charles does not request any fees for work on this claim from that date forward. Joint Stip. (doc. 44), Ex. at 3; see also Hensley, 461 U.S. at 440 ("[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised").

Aetna also argues awarding fees for the 9.3 hours Wolgemuth spent pursuing voluntary mediation would run counter to "prevailing case law." Resp. at 4 (citing Vallies v. Sky Bank, No. 2:01-1438, 2012 WL 2301706 (W.D. Pa. June 18, 2012)). Vallies is inapposite. In Vallies, fees incurred for participation in earlier, unsuccessful substantive mediation were not subtracted from the original fee award. See Vallies v. Sky Bank, No. 2:01-1438, 2011 WL 4527312, at *8-12 (W.D. Pa. Sept. 28, 2011). The subtracted fees were for unsuccessful mediation to resolve a dispute over attorney's fees requested for work performed requesting attorney's fees. Id. at *8; see also Hensley, 461 U.S. at 437 ("[a] request for attorney's fees should not result in a second major litigation"). The subtracted fees therefore were not related to the merits of the case.

Aetna also argues 7.2 hours spent drafting and conferencing with the Court regarding Charles's unsuccessful motion to determine the standard of review should be excluded from the fee award. Resp. at 5. According to the billing records, however, Wolgemuth spent only 4.5 hours drafting and revising the motion, and Aetna fails to identify the 2.8 hours of conferences focused on this issue. See Ex. at 2. Moreover, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."[3] Hensley, 461 U.S. at 435.

Aetna also contends the 7.5 hours spent seeking, preparing, and taking the Caldwell deposition should be excluded because Charles's standard of review argument was unsuccessful. Resp. at 5. Charles, however, was given permission to take the deposition by Judge Stengel. Wolgemuth also was forced to spend extra time litigating the deposition related to Aetna's

---

[3] Further, Judge Stengel's opinion makes clear that part of the standard of review confusion was attributable to Aetna's plan documents, which were not consecutively numbered or clearly identified. SJ Op. at 18 n.105. Judge Stengel was able to identify the governing plan documents only after counsel for Aetna explained them in a phone conference.

unsuccessful motion for a protective order. Wolgemuth's time spent seeking discovery from Caldwell is compensable. Tomasko, 357 F. App'x at 479.

Finally, Aetna argues Wolgemuth's billing entries are inadequate to determine how much of the time spent pursuing summary judgment was actually devoted to challenging the incorrect standard of review. Resp. at 5. Wolgemuth's billing entries are sufficiently detailed, and "it is not necessary to know the exact number of minutes spent, nor the precise activity to which each hour was devoted." Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir. 1983). He clearly identified the date and activity in each billing entry, and the periods of time spent are appropriate to each description. See Ex. at 2-3. The only adjustment I make to the requested fees is to use the billing rate as of the date of the request, not the date on which the tasks were performed. Lanni, 259 F.3d at 149.

I have reviewed Charles's costs and found them reasonable. Ex. at 3.

I find that Wolgemuth's billing entries adequately detailed and sufficiently efficient to justify payment. Id. I recommend ordering attorney's fees for 77.3 hours at $350/hour for a total of $27,055 in fees and $475.76 in costs, or $27,530.76.

Accordingly, I make the following:

## RECOMMENDATION

AND NOW, on May 4, 2017, it is respectfully recommended that:

1. The Motion for Attorney Fee's be GRANTED; and

2. The Court Order payment of $27,055 in fees and $475.76 in costs.

BY THE COURT:


*/s/Timothy R. Rice*
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE